Argued and submitted July 9, 2003, affirmed October 27, 2004, petition for review denied February 1, 2005 (338 Or 57)

## STATE OF OREGON,
*Respondent,*

*v.*

## PAUL R. TOSTE,
*Appellant.*

## 007169; A115472

100 P3d 738

Kevin T. Lafky argued the cause for appellant. On the brief were Elizabeth A. Baldwin and Stephen L. Roman.

Kaye Ellen McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

Armstrong, J., dissenting.

**LANDAU, P. J.**

In this criminal appeal, defendant challenges on double jeopardy grounds his conviction for driving under the influence of intoxicants (DUII). We affirm.

The relevant facts are few and undisputed. Defendant was stopped while driving on a state highway and arrested for DUII. Defendant disclosed to the arresting officer that he had consumed hydrocodone, the generic form of the analgesic Vicodin, shortly before his arrest. The state initially charged defendant with driving under the influence of alcohol only. ORS 813.010(1)(a). The jury was unable to reach a verdict on that charge, however. The trial court declared a mistrial and discharged the jury.

The state then filed an amended complaint, charging defendant with driving under the influence of a combination of alcohol and a controlled substance. Defendant moved to dismiss that charge on double jeopardy grounds. He argued that, because jeopardy already had attached to his DUII charge, which was based on alcohol alone, he could not now be subject to a DUII charge based on alcohol and a controlled substance. Because preservation is a key issue on appeal, we pause to consider in some detail the nature of defendant's double jeopardy arguments.

Defendant filed a written motion to dismiss. The entirety of the written analysis was as follows:

"**Authorities:**

"ORS 131.505, *et seq.*
"ORS 135.470

"Article I, § 12, Oregon Constitution
"Amendment V, United States Constitution

"State ex rel Turner v. Frankel, 322 Or 363 (1995)
"State v. Martin, 288 Or 643 (1980)"

At the hearing on the motion, defendant advanced what he characterized as two different arguments. His first argument was purely statutory. He began by asking the court "to look at ORS 131.505 and statutes following, because I think the answer to my motion is found actually within the

statutory language itself." He then quoted the statute and discussed in some detail how the statute barred the state from bringing the new charge based on the combination of alcohol and controlled substances. Throughout the discussion, defendant did not once use the word "constitution." He did not cite Article I, section 12, of the Oregon Constitution, much less argue that the new charge was barred by that provision of the constitution. His argument rested exclusively upon the statute.

At that point, defendant informed the court that "[t]he second argument I would make, Your Honor, is pursuant to two cases." He then cited *Turner* and *Martin*. According to defendant, in both of those cases, the defendants had asserted double jeopardy arguments, but the court disposed of the arguments on other—*non-double-jeopardy*—grounds. Defendant referred to the grounds as "procedural fairness." Defendant described the facts and holdings of each of the two cases and emphasized that "what the court said is, listen, we aren't going to find this really on former jeopardy grounds," but rather, on other grounds. Defendant then closed his argument with the following statement:

> "So for those two reasons, Your Honor, just, I think, reading the statute, I don't know that you even have to get into the *Martin / Turner* analysis, but simply by reading the statute, if you just look at that statute, read it carefully and slowly, I think it very clearly indicates, as I've stated, he can be re-prosecuted for the same offense, alcohol only, but beyond that, no. That's No. 1.

> "And No. 2, that failing that, *Martin / Turner* analysis applies."

Again, the transcript of the hearing contains no mention of a contention that the state's amended complaint was barred by Article I, section 12.

The trial court denied the motion. Defendant then entered a conditional plea of guilty pursuant to ORS 135.335(3) and initiated this appeal.

Defendant first argues that the state's amended complaint violates ORS 131.515. That statute provides, in part:

> "Except as provided in ORS 131.525 * * *

"(1)   No person shall be prosecuted twice for the same offense.

"(2)   No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

Defendant focuses his argument on subsection (2), the mandatory joinder provision, characterizing the charges in the original complaint and in the amended complaint as different offenses. The state, for its part, concedes that the relevant facts concerning defendant's possession and use of hydrocodone were known to the state before the commencement of the initial prosecution, and it likewise concedes that the original venue was appropriate for the charges that were brought in the second prosecution. It argues that the different charges in the original and the amended complaints did not violate the statute because they concern two separate offenses. Defendant insists that the complaints concern the same offense.

We need not address that contention because, even if defendant is correct that the charges in the original and the amended complaints concerned the same offense, the second prosecution is barred by subsection (2) only if no exceptions to that subsection apply. In this case just such an exception does apply.

As we have noted, ORS 131.515 begins with the express condition "[e]xcept as provided in ORS 131.525." ORS 131.525, in turn, provides, in part:

"(1)   A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(b)   The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

"(D)   The jury is unable to agree upon a verdict."

In this case, the trial judge terminated the first prosecution "other than by judgment of acquittal" because the jury was unable to agree upon a verdict. Thus, this case falls squarely within the exception described in ORS 131.525(1)(b)(D).

Defendant argues that we should apply the "hung jury" exception only to subsequent prosecutions for the same offense, not to subsequent or concurrent prosecutions based on new charges in an amended complaint. In other words, he argues that the exception should operate to negate ORS 131.515(1) but not ORS 131.515(2).

The short answer to that contention is that it is defeated by the wording of the statute. ORS 131.525(1)(b)(D) exempts from ORS 131.515 *all* prosecutions after hung juries. It does not distinguish between second prosecutions based on the same charged offense and second prosecutions based on new charges or theories. We reject defendant's statutory argument without further discussion.

■ Defendant next argues that the state's amended complaint violates the double jeopardy provision of Article I, section 12, of the Oregon Constitution. The state argues that defendant failed to preserve that argument. We agree with the state.

■ In *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), the Supreme Court held that "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify it's alleged error with enough clarity to permit it to consider and correct the error immediately." Merely citing a case or a constitutional provision is not sufficient. Directly on point in that regard is our opinion in *State v. Talbert*, 153 Or App 594, 958 P2d 902 (1998). In that case, the defendant cited Article I, section 12, in a memorandum to the trial court but otherwise did not develop the argument. We concluded that the mere citation to Article I, section 12, was insufficient to preserve a state constitutional double jeopardy contention on appeal:

> "Defendant cited Article I, section 12, in his memorandum to the trial court, but cited no Article I, section 12, cases. All of defendant's arguments, both in his trial memorandum

and in his oral argument to the trial court, concerned ORS 131.515. Merely citing Article I, section 12, is not sufficient to preserve that issue."

*Id.* at 600; *see also State v. Riggs*, 143 Or App 427, 430-31, 923 P2d 683 (1996), *rev den*, 325 Or 247 (1997) ("By merely citing to Article I, section 12, * * * defendant did not clearly present the position he now takes on appeal. Furthermore, the state was denied the opportunity in the trial court to meet the state constitutional argument.").

In this case, defendant asserted two arguments in support of his motion to dismiss. First, he invoked ORS 131.515. Second, he argued "procedural fairness," citing *Turner* and *Martin*. Beyond the unadorned citation to Article I, section 12, tucked into his written submission, defendant did not so much as mention the state constitution as a basis for his motion.

Thus, the only difference between this case and *Talbert* is that, in this case, defendant asserted a "procedural fairness" argument in addition to his argument under ORS 131.515. However, citing the procedural fairness cases—in which the Supreme Court explained that it was *not* applying Article I, section 12—did not serve to put the trial court on notice as to any Article I, section 12, contentions. We are left with the mere citation to the constitution, which, under *Talbert*, is insufficient. We conclude that defendant's constitutional contention is unpreserved.

The dissent insists that defendant's constitutional contention is preserved. It argues that, by asserting his statutory double jeopardy argument, defendant implicitly asserted a constitutional one as well. The dissent acknowledges that there is a substantial body of case law to the contrary; it argues that those cases are simply incorrect and should be overruled. We need not address that argument in this case, however. Whatever may be the merits of the dissent's contention that, in some cases, a statutory contention could implicitly raise a constitutional one, in this case, defendant explicitly told the court that he was asserting two—and only two—arguments in support of his motion to dismiss, namely, the statute and the doctrine of procedural fairness.

That leaves defendant's procedural fairness argument under *State v. Turner*, 247 Or 301, 429 P2d 565 (1967), and *State v. Martin*, 288 Or 643, 607 P2d 171 (1980). In *Turner*, the court held that a defendant who successfully appeals a conviction may not be sentenced for a greater term of imprisonment than was imposed after his or her first conviction. 247 Or at 315. In *Martin*, the court similarly held that a defendant who successfully moves for a new trial should not be subject to the risk of being prosecuted for additional charges in the new trial. 288 Or at 647.

We described the significance of those two cases in *State v. Johnson (A104954)*, 172 Or App 29, 17 P3d 1087, *rev den*, 332 Or 240 (2001). We held that the "procedural fairness" rule that was applied in those cases applies only to cases involving retrials following proceedings *initiated by the defendants* to relieve them of their convictions. The critical issue, we explained, is the need to avoid requiring defendants to put themselves at a risk of additional charges if they exercise their procedural rights. *Id.* at 33.

In this case, the new charge was a result of a hung jury, not defendant exercising any procedural right. Defendant simply did not face the "Hobson's choice" that we said was necessary in *Johnson* for the procedural fairness rule to apply. We therefore conclude that the trial court did not err in denying defendant's motion to dismiss.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that the statutory prohibition against subjecting defendants to successive criminal prosecutions did not bar the state from trying defendant on a charge of driving under the influence of intoxicants and controlled substances after the court had granted a mistrial on a charge of driving under the influence of intoxicants that arose from the same criminal episode. I agree with the majority's conclusion on that issue. I disagree, however, with its conclusion that defendant failed to preserve an objection that the second prosecution violated Article I, section 12, of the Oregon Constitution. I believe that defendant preserved that

issue and that the second prosecution violated Article I, section 12. I accordingly dissent from the majority's decision to affirm the trial court's judgment.

In his motion to dismiss the amended charges "on the ground that a former prosecution bars the prosecution for the offense being charged," defendant listed the following supporting authorities: ORS 131.505; ORS 135.470; Article I, section 12, of the Oregon Constitution; the Fifth Amendment to the United States Constitution; *State ex rel Turner v. Frankel*, 322 Or 363, 908 P2d 293 (1995); and *State v. Martin*, 288 Or 643, 607 P2d 171 (1980).[1] In the hearing on the dismissal motion, defendant made a number of arguments that, taken together, describe a plausible Article I, section 12, double jeopardy argument:

"So, clearly based upon the record * * * this [driving under the influence of a combination of intoxicating liquor and a controlled substance] was a theory which was reasonably known to the prosecutor at the time the first prosecution was commenced. They * * * could have charged my client under varying theories; Under the Influence of Alcohol, Under the Influence of Controlled Substances, under the influence of a combination of those, but they chose not to do so. They chose to proceed on an alcohol only theory.

"* * * * *

"We have been to trial. A jeopardy has attached. Jeopardy gets unattached for that same offense if there's a hung jury. But, jeopardy does not get unattached to allow the state to proceed on some other offense. And for purposes of jeopardy, there are two offenses involved here: [One] is alcohol only theory; the other is combination of drugs and alcohol.

"* * * * *

"[Y]ou can be prosecuted twice for the same offense if there's a hung jury. But that doesn't mean that the state can come back with a different offense, which is drugs and alcohol. That's a different offense for purposes of former jeopardy. So, it doesn't mean that the state can come back and charge a person with a different offense after a hung jury."

---

[1] Defendant did not renew his Fifth Amendment argument on appeal.

Defense counsel discussed ORS 131.515 and ORS 131.525 in his oral argument to the trial court. However, those arguments are equally relevant to defendant's constitutional claim because the statutory and constitutional standards are nearly identical. Under Article I, section 12, a second prosecution is for the same offense if "(1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution." *State v. Brown*, 262 Or 442, 457-58, 497 P2d 1191 (1972). Aside from employing the term "criminal episode" rather than "same act or transaction," the standard set out in ORS 131.515(2) tracks almost exactly with the constitutional standard.[2] Thus, the statutory arguments necessarily implicate the constitutional provision that defendant also cited.

Defendant's focus on the statute, thus, did not render his reasoning any less relevant to his constitutional defense. Article I, section 12, provides that "[n]o person shall be put in jeopardy twice for the same offence * * *." Defendant was "put in jeopardy" twice. The prosecution acknowledged repeatedly in the hearing on the motion to dismiss that the two charges at issue described a single offense. Defendant would therefore appear to have presented and preserved a constitutional double jeopardy defense, even without further citation to case law.[3]

The state and the majority rely on *State v. Talbert*, 153 Or App 594, 600, 958 P2d 902 (1998), in which we stated:

---

[2] ORS 131.515 provides, in part:

"Except as provided in ORS 131.525 and 131.535:

"* * * * *

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

[3] The trial court judgment provides that "[d]efendant's plea will be entered pursuant to ORS 135.335(3) to preserve defendant's right to appeal for former jeopardy and procedural fairness issues prior to trial." That general language would appear to reflect the court's awareness that both statutory and constitutional arguments were in play.

"Defendant cited Article I, section 12, in his memorandum to the trial court but cited no Article I, section 12, cases. All of defendant's arguments, both in his trial memorandum and in his oral argument to the trial court, concerned ORS 131.515. Merely citing Article I, section 12, is not sufficient to preserve that issue."

There are two problems with the majority's application of *Talbert* in this case. First, although defendant focused on ORS 131.515 in his arguments to the trial court, those arguments apply equally to Article I, section 12—indeed, in light of ORS 131.525(1)(b)(D), they apply more aptly to the constitutional than to the statutory provision. Thus, this is not a case in which defendant relied on statutory arguments that had no connection to his constitutional arguments.

The second problem is that *Talbert* did not adequately recognize the relationship between the statute and the constitutional provision. In *Talbert,* we relied on *State v. Pope,* 150 Or App 457, 946 P2d 1157 (1997), *rev den,* 327 Or 521 (1998) and *State v. Riggs,* 143 Or App 427, 923 P2d 683 (1996), *rev den,* 325 Or 247 (1997). In *Pope,* we held that a defendant's search and seizure arguments under Article I, section 9, of the Oregon Constitution did not suffice to preserve his federal Fourth Amendment defenses. *Pope,* 150 Or App at 463. In *Riggs,* we similarly held that a defendant's double jeopardy arguments under the Fifth Amendment to the United States Constitution did not suffice to preserve his double jeopardy claims under Article I, section 12, of the Oregon Constitution. *Riggs,* 143 Or App at 430-31. In both cases the state and federal provisions were significantly different, so the arguments under one constitution did not implicate any arguments under the other. The search and seizure standards under Article I, section 9, differ markedly from those of the Fourth Amendment;[4] the double jeopardy standards of Article I, section 12, likewise differ significantly from those of the Fifth Amendment.[5]

[4] For instance, Oregon's exclusionary rule, unlike the federal one, is not premised on deterring future police misconduct. Instead, it embodies a state constitutional right. *Armatta v. Kitzhaber,* 327 Or 250, 282, 959 P2d 49 (1998). Nor has Oregon chosen to adopt the federal "good faith" exception to the warrant requirement. *State v. Johnson,* 120 Or App 151, 156, 851 P2d 1160, *rev den,* 318 Or 26 (1993).

[5] For instance, Oregon has adopted a more liberal construction of the term "same offense" as used in the state provision. *See Grady v. Corbin,* 495 US 508, 521,

In contrast to *Pope* and *Riggs*, in this case the standards applicable under ORS 131.515(2) and Article I, section 12, are, for the most part, identical. For that reason, I would hold that sufficiently detailed double jeopardy arguments, made primarily in terms of ORS 131.515(2), if conjoined with at least one clear citation to Article I, section 12, can serve to preserve the state constitutional argument.

*Talbert* was one of a number of cases in which we have incorrectly assumed that, although ORS 131.515 protects defendants from subsequent prosecutions based on new charges arising out of the same criminal transaction or occurrence, Article I, section 12, does not do so. That assumption appears to have arisen from our misunderstanding of *Brown* and subsequent cases.

In *Brown*, the Supreme Court held that, in addition to prohibiting subsequent prosecutions for a particular charge, Article I, section 12, bars the state from bringing multiple prosecutions for *different* charges arising out of the same transaction. 262 Or at 457-58. For constitutional purposes, those *different* charges relate to the *same* offense. *Id.* The court explained that a continuing proliferation of offenses raised the possibility of prosecutorial abuse of a narrow interpretation of the constitution:

> "A prosecutor is limited only by the number of ways in which the legislature has made the defendant's conduct punishable, and may indulge in the harassment against which the double jeopardy guarantee should protect. * * * He can use the first prosecution as a 'trial run,' planning on refining his case if the first prosecution is unsuccessful."

*Id.* at 448-49. In order to avoid that problem, the court held that the constitution requires the state to join all charges arising out of a particular criminal episode in one proceeding:

> "We hold, therefore, that under Article I, Section 12, of our constitution, a second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably

110 S Ct 2084, 109 L Ed 2d 548 (1990) (articulating a "same conduct" test similar to the "same transaction" test articulated in *Brown*); *United States v. Dixon*, 509 US 688, 704, 113 S Ct 2849, 125 L Ed 2d 556 (1993) (retreating from *Grady*).

should have known of the facts relevant to the second charge at the time of the original prosecution."

*Id.* at 457-58.

Three years later, in a footnote in *State v. Hammang*, 271 Or 749, 756-57 n 4, 534 P2d 501 (1975), the court overruled the result in *Brown* but also stated that it was "in no way a repudiation of *Brown*'s rationale." Eleven years after that, in *State v. Farley*, 301 Or 668, 674, 725 P2d 359 (1986), the Supreme Court overruled the *Hammang* footnote and fully reaffirmed *Brown*. During the interim between *Hammang* and *Farley*, both this court and the Supreme Court sometimes suggested that Article I, section 12, gave less protection to a defendant's double jeopardy rights than did ORS 131.515(2). *See State v. Knowles*, 289 Or 813, 827, 618 P2d 1245 (1980) (Tanzer, J., specially concurring) (declaring that *Hammang* had completely overruled *Brown* and that "Oregon statutes embody both (a) the constitutional bar, and (b) an extended legislative bar on successive prosecutions"); *State v. Yock*, 49 Or App 749, 754, 621 P2d 592 (1980), *rev den*, 290 Or 727 (1981) (suggesting, on the basis of *Hammang*, that *Brown* might no longer explain Article I, section 12, in which case, rather than the "same transaction" test, the relevant constitutional test for determining whether two prosecutions involve the same offense would be the less protective "same evidence" test).

The statements that the courts made during the period between *Hammang* and *Farley* managed to gain a life of their own in this court, and we have continued to state that ORS 131.515 offers more protection to defendants than does Article I, section 12. *See, e.g.*, *State v. Nguyen*, 95 Or App 653, 656, 771 P2d 279, *rev den*, 308 Or 142 (1989) (relying on *Knowles* and *Yock*); *State v. Delker*, 123 Or App 129, 132, 858 P2d 1345 (1993), *rev den*, 318 Or 326 (1994) (citing *Nguyen* for the proposition that ORS 131.515(2) "provides greater protection for criminal defendants [than the Oregon Constitution] by requiring that all known charges arising out of the same criminal episode be prosecuted together"); *State v. Lyons*, 161 Or App 355, 360, 985 P2d 204 (1999) (citing *Delker*, same rule); *State v. Harris*, 167 Or App 360, 362-63, 5 P3d 1113 (2000) (citing *Lyons*, same rule); *State v. Garnier*,

171 Or App 564, 567, 16 P3d 1175 (2000) (citing *Harris*, same rule); *State v. Cox*, 178 Or App 426, 430-31, 37 P3d 193 (2001), *rev'd on other grounds*, 336 Or 284, 82 P3d 619 (2003) (citing *Hammang, Garnier, Harris, Lyons*, and *Delker* for the same rule). To the extent that those or any other cases suggest that a less protective standard than the *Brown* "same transaction" test applies to Article I, section 12, they conflict with the authoritative statement in *Farley*. Because *Talbert*'s discussion of preservation is necessarily based on the assumption that the statute and the constitution are substantially different, it also is erroneous.

The state also notes that defendant failed to cite any specific constitutional case law supporting his position that a deadlocked jury permits reprosecution on the original charges but not prosecution on new charges. However, there are few if any cases that defendant could have cited. Since 1972, when *Brown* established the same transaction test in Oregon, no Oregon appellate court appears to have considered whether a deadlocked jury would annul jeopardy on other charges arising out of the transaction in the same way that it would annul jeopardy on the charges actually tried. Defendant cannot be faulted for failing to cite nonexistent authority and relying, instead, on the logic behind the statute and the constitution.

On the basis of all of the above considerations, I believe that defendant's Article I, section 12, argument was adequately preserved. I therefore proceed to consider defendant's argument on its merits.

Article I, section 12, of the Oregon Constitution provides that "[n]o person shall be put in jeopardy twice for the same offence." In addition to prohibiting subsequent prosecutions for a particular charge, the provision bars the state from bringing multiple prosecutions for different charges arising out of the same transaction. *Brown*, 262 Or at 457-58. Jeopardy normally attaches at the impaneling of the jury. *State v. Reinhart*, 26 Or 466, 472-73, 38 P 822 (1895). Accordingly, once the jury was impaneled in the first prosecution against defendant, Article I, section 12, barred the state from bringing subsequent prosecutions against defendant based on the original charges or any other charges arising out of the

same transaction. If defendant had been acquitted in the first prosecution, the state could have neither brought new charges nor reprosecuted the old charges.

The state argues that the dismissal of the first jury when it could not reach a verdict annulled jeopardy both for the original charges and for any other charges that the state might decide to bring. It is clear under the Oregon Constitution that retrial of a defendant on the original charges after dismissal of a jury for inability to reach a verdict does not offend constitutional double jeopardy principles. In *Reinhart*, the court confirmed that

> "[i]t must be conceded that in this state the inability of a jury in a criminal action to agree upon a verdict after mature deliberation is a sufficient reason for their discharge by the court, and that such a discharge is not a bar to a further prosecution for the same offense."

26 Or at 474 (citing *State v. Shaffer*, 23 Or 555, 556-57, 32 P 545 (1893)).

However, the fact that a deadlocked jury annuls jeopardy as to the original charge does not automatically imply that it also annuls jeopardy as to new charges. Oregon courts have generally articulated the rule in the context of reprosecution on the initial charges. *See, e.g., State v. Paquin*, 229 Or 555, 557, 368 P2d 85 (1962) (recognizing annulment by hung jury where defendant was subsequently tried upon the same indictment); *State v. Kimsey*, 182 Or App 193, 203, 47 P3d 916 (2002) (noting that, "when a defendant moves for a mistrial or otherwise consents to have a trial terminated, a subsequent trial *on the same charges* ordinarily is not barred" (emphasis added)); *State v. Bannister*, 118 Or App 252, 258, 846 P2d 1189 (1993) (holding that "the state's reprosecution of defendant *on charges on which the jury was unable to reach a verdict* was not barred by * * * Article I, section 12, of the Oregon Constitution" (emphasis added)).

In *State v. Rathbun*, 287 Or 421, 430, 600 P2d 392 (1979), the Supreme Court outlined the considerations involved in deciding what circumstances will allow reprosecution after jeopardy has attached:

> "No one disputes that a purpose to be served by a constitutional or statutory double jeopardy clause is to prevent repeated attempts to convict a person for the same offense thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. * * * Nor should there be any dispute as to the defendant's valued right to have his trial completed by a particular tribunal once trial has begun. * * * These considerations must bow, however, to the sense of the rule * * * providing that the attachment of jeopardy is annulled if the prior prosecution is terminated because there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."

(Citations and internal quotation marks omitted.) The reasons for permitting a retrial, thus, are that there is a manifest necessity for terminating a trial when the jury cannot agree but that the ends of public justice require that the state be allowed to prosecute a criminal case to a final disposition of acquittal or guilt. Nothing about those considerations supports permitting the state to change the charges in the first trial to different charges in the second.

If the ends of public justice do not require that the state be allowed to improve its complaint with new charges or theories before the jury's dismissal for failure to agree, it is difficult to see why they would do so after the dismissal. Barring the state from asserting new charges after the dismissal of a deadlocked jury leaves the state in the same position that it faced before the jury's discharge. It will be able to renew the original case with a new jury and will receive a final disposition on the merits. As the New Jersey court remarked in *State v. Antieri*, denial of the authority to assert new charges after a hung jury "will not prejudice the State. When the first trial commences all discovery has been completed and the State knows or should know if other offenses exist." 180 NJ Super 267, 272, 434 A2d 668, 671 (1981); *see also State v. Russell*, 101 Wash 2d 349, 352-53, 678 P2d 332, 335-36 (1984) (impliedly concluding that "the ends of justice would [not] be defeated" by denial of the state's authority to assert new charges).

The fact that the first trial allowed the state to learn of weaknesses in its original charges is not a ground for disregarding a defendant's right to be free from multiple trials.

Indeed, to recognize such an argument would be to contradict two essential purposes of the prohibition of double jeopardy, to protect defendants from harassment and to prevent the state from honing its case against a defendant through repeated prosecutions. *Bannister*, 118 Or App at 257 (citing *State v. Helander*, 92 Or App 108, 758 P2d 359 (1988)); *see Brown*, 262 Or at 447-49.

I conclude that Article I, section 12, of the Oregon Constitution barred the state from bringing a new charge against defendant after the jury was dismissed for failure to agree on a previous charge when the later charge arose out of the same transaction as the former, both charges could have been tried in the same proceeding, and the prosecutor knew of the facts relevant to the second charge at the time of the original prosecution. Hence, I would hold that the trial court erred in denying defendant's motion to dismiss the amended complaint and in entering a judgment that convicted defendant on the charge in the amended complaint.

I dissent.